# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

KEISHIA McDANIEL, individually and on behalf of all others similarly situated,

v.

KNM HOLDINGS, LLC d/b/a CHURCH'S CHICKEN

**Case No. 4:21-cv-00599**

FLSA Collective Action

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Keishia McDaniel brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2.     McDaniel and other workers like her were paid a salary by KNM Holdings LLC d/b/a Church's Chicken ("KNM"), without any overtime.

3.     But McDaniel and the other workers like her were paid less than the required minimum salary to qualify for an overtime exemption.

4.     This collective action seeks to recover the unpaid wages and other damages owed to McDaniel and other workers like her at KNM.

### JURISDICTION AND VENUE

5.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because KNM maintains its principal office in this District and Division.

### PARTIES

7.     McDaniel was, at all relevant times, an employee of KNM.

8.      McDaniel was a salaried employee of KNM.

9.      McDaniel's written consent is attached as Exhibit A.

10.     The class of similarly situated employees or potential class members sought to be certified is defined as:

> **All current and former salaried employees of KNM Holdings, LLC who were paid less than $455 per week prior to January 1, 2020, or less than $684 per week after January 1, 2020, and who were not paid an overtime premium for hours worked in excess of 40 in a workweek, at any point in the past three years.**

11.     **KNM Holdings, LLC d/b/a Church's Chicken ("KNM")** is a Texas limited liability company with its headquarters and principal place of business in Harris County, Texas.

12.     KNM may be served by service upon its registered agent, **Khalid Khan, 1120 NASA Parkway, Ste. 206, Houston, TX 77058**, or by any other method authorized by law.

## COVERAGE UNDER THE FLSA

13.     At all relevant times, KNM was an employer of the Putative Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14.     At all relevant times, KNM was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15.     During at least the last three years, KNM has had gross annual sales in excess of $500,000.

16.     KNM was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

17.     KNM employs many workers, including McDaniel, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise

work on goods or materials that have been moved in or produced for commerce by any person.

18.     The goods and materials handled, sold, or otherwise worked on by McDaniel and other KNM employees and that have been moved in interstate commerce include, but are not limited to, kitchen supplies, cash registers, phones, restaurant equipment, and food.

## FACTS

19.     KNM operates restaurants throughout the southwest, including in Texas and Oklahoma.

20.     McDaniel began working for KNM in October 2018.

21.     KNM paid McDaniel a salary.

22.     KNM did not pay McDaniel on a fee basis.

23.     During the time she worked for KNM, McDaniel's salary was under the minimum limit to even qualify for an exemption from the FLSA's overtime requirements for an executive, administrative, or professional employee.

24.     Beginning January 1, 2020, the FLSA's minimum salary to qualify for an executive, administrative, or professional exemption was $684 per week. 29 CFR § 541.600(a).

25.     KNM did not pay McDaniel a salary of $684 or more per week.

26.     KNM paid McDaniel a salary of less than $684 per week.

27.     Beginning January 1, 2020, KNM did not pay McDaniel at or above the amount required by 29 CFR § 541.600(a).

28.     For the purposes of meeting the minimum salary requirements for an exemption under 29 CFR § 541.600(a), it does not matter what an employee's job duties are.

29.     The FLSA's executive, administrative, or professional exemptions cannot be met if an employee is not paid at least the amount required by 29 CFR § 541.600(a).

30.     So for the purpose of being exempt from the FLSA's overtime requirements of 29 CFR § 541.600(a) and (b), it does not matter McDaniel's job title or job duties.

31.     It is not possible that McDaniel could have been exempt from the FLSA under the executive, administrative, or professional exemptions.

32.     McDaniel worked more than 40 hours per week.

33.     McDaniel often worked 60 hours per week, or more.

34.     When she did work more than 40 hours per week, McDaniel was not paid an overtime premium.

35.     For example, for the two-week period from May 18 to May 31, 2020, McDaniel was paid a total salaried amount of only $1,307.70.

36.     This means McDaniel's salary was only $653.85 per week for each of those two weeks.

37.     From May 18 to May 31, 2020, McDaniel also worked overtime, but she was not paid any overtime compensation.

38.     During other weeks, McDaniel's salary was less.

39.     For example, for the two-week period from March 23 to April 5, 2020, McDaniel was paid a total salaried amount of only $1,230.77.

40.     This means McDaniel's salary was only about $615.38 for each of those two weeks.

41.     From March 23 to April 5, 2020, McDaniel also worked overtime, but she was not paid any overtime compensation.

42.     KNM knew McDaniel was paid less than $684 per week.

43.     KNM knew McDaniel's salary was under $684 per week.

44.     KNM knew McDaniel's salary was under the minimum amount required to meet the FLSA's executive, administrative, or professional exemptions.

45.     KNM knew, or showed reckless disregard for whether, its policy of not calculating and paying overtime at the full, regular hourly rate violated the FLSA.

46.     KNM's failure to pay full overtime to these hourly workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

47.     McDaniel incorporates all other allegations.

48.     The illegal pay practices KNM imposed on McDaniel were likewise imposed on the Putative Class Members.

49.     The illegal pay practices KNM imposed on McDaniel and the Putative Class Members were not dependent on any of their job duties.

50.     KNM employs many other hourly workers who worked over 40 hours per week and were subject to KNM's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

51.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

52.     Based on their experiences and tenure with KNM, McDaniel is aware that KNM's illegal practices were imposed on the Putative Class Members.

53.     These workers were similarly situated within the meaning of the FLSA.

54.     Any differences in job duties do not detract from the fact that these salaried workers were entitled to overtime pay.

55.     KNM's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

### CAUSE OF ACTION–OVERTIME VIOLATIONS OF THE FLSA

56.     McDaniel incorporates all other allegations.

57.     By failing to pay McDaniel and the Putative Class Members overtime at 1.5 times their regular rates, KNM violated the FLSA. 29 U.S.C. § 207(a).

58.     KNM owes McDaniel and the other Putative Class Members the difference between the rate actually paid and the proper overtime rate.

59.     Because KNM knew, or showed reckless disregard for whether, its pay practices violated the FLSA, KNM owes these wages for at least the past three years.

60.     KNM also owes McDaniel and the Putative Class Members an amount equal to the unpaid overtime wages as liquidated damages.

61.     McDaniel and the Putative Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

### RELIEF SOUGHT

62.     Wherefore, McDaniel prays for judgment against Arc as follows:

(a)     For an order certifying this case as a collective action for the purposes of the FLSA claims;

(b)     For an order finding KNM liable for violations of state and federal wage laws with respect to McDaniel and all Putative Class Members covered by this case;

(c)     For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages to McDaniel and all Putative Class Members covered by this case;

(d)     For a judgment awarding McDaniel and all Putative Class Members covered by this case their costs of this action;

(e)     For a judgment awarding McDaniel and all Putative Class Members covered by this case their attorneys' fees;

(f)     For a judgment awarding McDaniel and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(g)     For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
Texas Bar # 24069719
S.D. Texas # 1076547
**PARMET PC**
3 Riverway, Ste. 1910
Houston, Texas 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**